IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GEORGE RAYMOND SPRY,

       Plaintiff,

                                          CIVIL ACTION
  vs.                                   No. 11-3057-SAC

DAVID R. McKUNE, et al.,

       Defendants.

## MEMORANDUM AND ORDER

This matter comes before the court on a civil rights action filed pursuant to 42 U.S.C. § 1983 by a prisoner in state custody. Plaintiff proceeds pro se and seeks leave to proceed in forma pauperis.

The defendants are identified as the Warden of the Lansing Correctional Facility and unknown officers of the Disciplinary Administrator.

**Motion to proceed in forma pauperis**

Plaintiff's motion for leave to proceed in forma pauperis is governed by 28 U.S.C. § 1915(b). In support of his motion, plaintiff provides certified financial records from his institutional account for the six months preceding the date of filing of this action.

Pursuant to 28 U.S.C. § 1915(b)(1), the court must assess as an initial partial filing fee twenty percent of the greater of the average monthly deposit or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.

Having examined the records, the court finds the average monthly deposit to plaintiff's account is $7.05, and the average monthly balance is $.52. The court therefore assesses an initial partial filing fee of $1.00, twenty percent of the average monthly deposit, rounded to the lower half dollar.[1]

**Background**

The summary of facts is based upon the complaint.

On December 7, 2010, a disciplinary report (DR) was written charging plaintiff with misconduct.[2] Plaintiff was served with the DR on the following day. However, the hearing scheduled for December 13, 2010, was not held. Plaintiff again was served with a notice concerning the DR on December 16, 2010, but, again, the scheduled hearing was not held.

---

[1] Plaintiff's payments will continue until he satisfies the $350.00 filing fee in this action and any unpaid balance of filing fees from earlier cases. These payments will be made in installments calculated pursuant to 28 U.S.C. §1915(b)(2).

[2] The complaint does not state the nature of the charge.

Plaintiff began efforts to have the DR dismissed. He wrote a letter to the Disciplinary Administrator but received no response. He then sent legal mail to the Administrator, but again, he received no response. In late January 2011, plaintiff wrote to Warden McKune seeking dismissal of the DR. He received no response. In mid-February, plaintiff spoke with his Unit Team concerning this matter, and a member of the Unit Team sent an e-mail concerning the request and took a written request from plaintiff.

On February 18, 2011, plaintiff received notice of a hearing scheduled on February 21, 2011. At that hearing, the hearing officer denied plaintiff's written motion to dismiss, took his plea of not guilty, and continued the hearing to another date.

On February 18, plaintiff sent Warden McKune another letter seeking dismissal of the DR. On February 21, he sent the Administrator a request for dismissal. On February 24, he received a response from the Administrator saying the DR would be continued.

On February 25, plaintiff received a notice of the hearing, and the hearing took place on February 28. The hearing officer again denied plaintiff's motion to dismiss, found plaintiff guilty, and imposed a fine of $10.00 and 60 days' restriction,

3

suspended for 180 days.

Plaintiff then commenced this action. He seeks the dismissal of the DR and costs and fees of this action, alleging the violation of his right to due process and violation of state administrative regulations.

**Discussion**

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).

The United States Supreme Court has determined that protected liberty interests are implicated when a prisoner is subjected to either conditions of confinement that "impose atypical hardship on the inmate in relation to the ordinary incidents of prison life" or to a disciplinary action that will "inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Thus, where such a protected liberty interest is at stake, an inmate is entitled to a disciplinary hearing that incorporates procedural due process protections including: (1) advance written notice of the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence where doing so would not jeopardize institutional safety or correctional goals, and (3) a written statement of the reasons

for the decision and the supporting evidence. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). The decision must be based upon "some evidence in the record." *Superintendent, Mass. Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 455-56 (1985).

Here, plaintiff's claim does not implicate a loss of credits that would impact the length of his confinement. Therefore, he is entitled to procedural due process only if the disciplinary action resulted in conditions of confinement that impose an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In *Sandin*, the Supreme Court determined that the prisoner's punishment of placement in disciplinary segregation for 30 days did not result in an atypical and significant hardship because it was not markedly different from the conditions in administrative segregation or protective custody housing. 515 U.S. at 486. Because there was no qualifying hardship, the Court did not reach whether the prisoner received due process in the administrative hearing.

In the Tenth Circuit, the relevant inquiry for whether an atypical and significant hardship exists includes: (a) whether the conditions of the plaintiff's confinement further a legitimate penological interest; (b) whether the conditions are harsh;

5

(c) whether placement in the conditions increases the duration of the plaintiff's confinement; and (d) whether the placement is indeterminate. *Estate of Dimarco v. Wyo. Dept. of Corr. Div. of Prisons,* 473 F.3d 1334, 1342 (10th Cir. 2007).

For example, such a hardship was found where a prisoner for three years was confined in his cell for all but 5 hours per week and was denied access to various services, including showers, outdoor recreation, telephones, law library, and other programming. *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006). Likewise, a probable qualifying hardship was found where a prisoner was placed in segregation for 750 days, where serious offenders received only 180 days. *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006).

In contrast, no qualifying hardship was found where a prisoner was placed in administrative segregation and denied prison amenities for 14 months, *Estate of DiMarco*, 473 F.3d at 1344; and the Tenth Circuit found that disciplinary segregation for less than 75 days could fail as a matter of law to state a qualifying hardship. *Gaines v. Stenseng*, 202 F.3d 1222, 1296 (10th Cir. 2002).

In this case, plaintiff was not subject to the loss of good time credits. Rather, he was fined and subjected to the loss of some prison amenities for a period of 60 days, although this

sanction apparently was suspended for 180 days.  These conditions do not support the existence of an atypical or qualifying hardship when viewed in the context of the ordinary incidents of prison life and the relevant case law.

And while plaintiff complains of a delay in processing the disciplinary charges against him, he was not entitled to a speedy trial.  *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").  Although a delay that caused the plaintiff to suffer some harm or prejudiced his ability to present a defense might present a due process claim, the brief delay between the December 7, 2010, disciplinary charges and the hearing conducted on February 28, 2011, does not suggest any such injury occurred.

Finally, while plaintiff broadly claims that the defendants violated provisions of Kansas administrative law, "a failure to adhere to administrative regulations does not equate to a constitutional violation."  *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993)(citing *Davis v.. Scherer,* 468 U.S. 183, 194 (1984)).  Thus, to the extent plaintiff asserts a federal constitutional claim based upon alleged violations of Kansas administrative regulations, he states no claim for relief.

## Conclusion

For the reasons set forth, the court is considering the summary dismissal of this action on the ground that plaintiff has not stated a federal claim for relief. Plaintiff will be directed to show cause why the matter should not be dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that on or before June 13, 2011, plaintiff shall submit an initial partial filing fee of $1.00 to the clerk of the court. Any objection to this order must be filed on or before the date payment is due.

IT IS FURTHER ORDERED plaintiff is granted to and including June 13, 2011, to show cause why this matter should not be dismissed for failure to state a claim upon which relief may be granted. The failure to file a timely response may result in the dismissal of this matter without additional prior notice.

A copy of this order shall be transmitted to the plaintiff.

**IT IS SO ORDERED.**

Dated at Topeka, Kansas, this 11th day of May, 2011.

S/ Sam A. Crow
SAM A. CROW
United States Senior District Judge